IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CP RAIL, a trade name for SOO LINE RAILROAD COMPANY, a Minnesota Corporation, | ) ) ) ) | |
| Plaintiff, | ) | No. 14 C 6892 |
| v. | ) ) | Judge Robert W. Gettleman |
| LEECO STEEL, LLC, a Limited Liability Company, and MILWAUKEE BULK TERMINALS, LLC, a Limited Liability Corporation, | ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CP Rail filed a four-count second amended complaint against defendants Leeco Steel, LLC ("Leeco") and Milwaukee Bulk Terminals, LLC ("MBT"), seeking demurrage[1] and other freight charges. MBT has filed the instant motion to dismiss plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the court grants MBT's motion.

---

[1] Demurrage charges are imposed by rail carriers when their railcars are detained beyond a certain period of time, known as "free time." See Atchison, Topeka, and Santa Fe Ry. v. Interstate Commerce Comm'n, 678 F.2d 912, 914 (7th Cir. 1982). The purpose of demurrage charges is "to encourage the prompt return of freight cars to service so as to guarantee the steady flow of rail freight." CSX Transp. Co. v. Novolog Bucks County, 502 F.3d 247, 258 (3d Cir. 2007) (citing Pennsylvania R.R. Co. v. Kittaning Iron & Steel Mfg. Co., 253 U.S. 319, 323 (1920)).

# BACKGROUND[2]

This cause of action stems from demurrage and miscellaneous charges assessed under plaintiff's Rail Tariff #2. Plaintiff, a rail carrier, alleges that "[o]n certain occasions in 2012 and 2013," it transported railcars loaded with defendant Leeco's steel plated products "and/or products own[ed] by others, designated for delivery to Defendant MBT's transloading terminal in Milwaukee, Wisconsin." On these occasions, the railcars were "transported under bills of lading designating MBT as the consignee." Plaintiff alleges that it accrued "demurrage charges, switching charges and related charges" associated with these shipments totaling $76,038.00.

"On other certain occasions in 2012 and 2013," plaintiff transported railcars designated for delivery to MBT's transloading terminal, containing only Leeco's products. During these trips, the railcars were transported under bills of landing designating Leeco as the consignee. Plaintiff alleges it accrued demurrage charges associated with these shipments totaling $151,834.82.

Plaintiff alleges that MBT's transloading terminal was a "Closed Gate" facility, requiring it to hold railcars at another location in Milwaukee until plaintiff requested, and MBT approved, placement at its facility. According to plaintiff, "[a]t all times during 2012 and 2013, the railcars in question were under the control of Defendant MBT, who exclusively gave directions to the Plaintiff CP as to when and where the railcars were to be placed at MBT's Facility and when they were to be removed from [ ] MBT's Facility." Plaintiff alleges that "Leeco and/or

---

[2] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

Defendant MBT" is liable for the demurrage charges totaling $151,834.82, and that MBT is liable for the charges totaling $76,038.00.

## DISCUSSION

**A.     Legal Standard**

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum, L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint allege more than legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.     Analysis**

Plaintiff's second amended complaint alleges numerous theories of liability under which it seeks to hold MBT liable for the total amount of freight charges at issue.[3] In Count I, plaintiff

---

[3] As a general matter, the court notes that it will not consider the Surface Transportation Board's (the "STB") April 9, 2014, decision extending liability for demurrage charges to "any person receiving rail cars from a rail carrier for loading or unloading." See 49 C.F.R. § 1333.3. As MBT points out, "administrative rules will not be construed to have retroactive effect unless
(continued...)

alleges that MBT is liable for all freight charges ($76,038.00) incurred where it was listed as consignee on the bills of lading[4] associated with the transport of the delayed railcars. MBT, however, argues that plaintiff's allegations fail to state a claim upon which relief can be granted because plaintiff has not alleged that MBT had notice of or consented to being named consignee on the bill of lading.

The Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10746, requires rail carriers to "compute demurrage charges, and establish rules related to those charges." It is well established in this circuit that when a rail carrier seeks to impose liability for freight charges, including demurrage, they "may be imposed only against a consignor,[5] consignee,[6] or owner of property, or others by statute, contract, or prevailing custom." Evans Prods. Co. v. Interstate Commerce Comm'n, 729 F.2d 1107, 1113 (7th Cir. 1984); see also Illinois Cent. R.R. Co. v. South Tec Dev. Warehouse, Inc., 337 F.3d 813, 820 (7th Cir. 2003). Accordingly, where a party, such as a warehouse or transloading terminal, fits none of these categories, imposition of liability for freight charges is permissible only in very limited circumstances. Illinois Cent., 337 F.3d at 820 ("non-consignees cannot generally be held

---

[3](...continued)
their language requires this result." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). Because the events at issue predate the effective date of STB's rule (July 15, 2014), and the rule does not contemplate retroactive application, it is inapplicable to this case.

[4] "A bill of lading is 'the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers.'" Norfolk Southern Railway Co. v. Groves, 586 F.3d 1273, 1275 n.1 (11th Cir. 2009) (quoting Southern Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982)).

[5] "A consignor is '[o]ne who dispatches goods to another on consignment.'" Id. at 1276 n.2 (quoting BLACK'S LAW DICTIONARY 327 (8th ed. 2004)).

[6] "A consignee is '[o]ne to whom goods are consigned.'" Id. at 1276 n.3.

responsible for demurrage charges"); see also Evans Prods., 729 F.2d at 1113 ("Attempts to support tariffs assessing freight charges against others tangentially involved in the shipment, such as warehousemen, pier operators, brokers, steamship agencies and others similarly situated, have failed.") (internal quotes omitted).

In Illinois Central, the Seventh Circuit held that "being listed by third parties as a consignee on some bills of lading is not alone enough to make [the defendant warehouse] a legal consignee liable for demurrage charges." Illinois Cent., 337 F.3d at 821. The Seventh Circuit, however, went on to note that such a designation, "coupled with other factors, might be enough to render [the defendant warehouse] a consignee." Id. Plaintiff argues that it has alleged sufficient "other factors" to state a claim for relief against MBT for the $76,038.00 in freight charges. According to plaintiff, these "other factors" include its allegations that MBT is a "Closed Gate" facility and that it would not deliver cars to MBT's facility until its request for placement had been approved by MBT. Plaintiff also argues that a 1988 credit application between the parties supports its claim of liability against MBT. The court disagrees.

As noted above, the Seventh Circuit has held that designation as consignee on a bill of lading is alone not sufficient to establish legal consignee status. Illinois Cent., 337 F.3d at 821; see also Evans Prods., 729 F.2d at 1113 ("No liability exists merely on account of being named in the bill of lading."). While the Seventh Circuit has not articulated what additional factors may be sufficient, it has suggested, as other circuits have held, that notice "may play a role in the determination of consignee status." Illinois Cent., 337 F.3d at 821; see, e.g., Groves, 586 F.3d at 1282 ("[A] party must assent to being named as a consignee on the bill of lading to be held liable as such, or at the least, be given notice that it is being named as a consignee in order that it might

5

object or act accordingly."). In Groves, the Eleventh Circuit reasoned that because "a party's status as consignee is a matter of contract . . . . [l]ike any contractual relationship, there must be a meeting of the minds between the parties." Groves, 586 F.3d at 1281. While plaintiff has indeed alleged more than just that MBT was designated as consignee on the bill of lading, its additional factual allegations have no bearing on MBT's legal status as consignee because they do not show a meeting of the minds concerning MBT's status as consignee. Accordingly, plaintiff's claim that MBT is liable for $76,038.00 in freight charges does not plausibly suggest a right to relief.

Plaintiff also alleges in Count I that MBT is liable for the $151,834.82 in demurrage charges incurred when Leeco was named consignee. As discussed above, a rail carrier may impose liability for demurrage charges "only against a consignor, consignee, or owner of property, or others by statute, contract, or prevailing custom." Evans Prods., 729 F.2d at 1113. Mirroring this requirement, Counts II through IV of plaintiff's second amended complaint allege that various contracts and customs establish MBT's liability for freight charges where Leeco was named consignee.[7] MBT argues that each of these counts fails to state a claim upon which relief can be granted.

In Count II, plaintiff alleges that pursuant to a 1988 credit application, MBT agreed that "payment will be made [to plaintiff] in accordance with rules and regulations including . . . liability for demurrage charges." According to plaintiff, MBT's failure to pay the demurrage charges at issue is a breach of this contract. Even assuming that the 1988 credit application is

---

[7] To the extent that plaintiff alleges that these allegations also establish MBT's liability where it was named consignee, they too fail for the reasons discussed below.

still in force, a review of the contract, which is attached as Exhibit D to the complaint, does not establish a contractual obligation under which MBT agreed to pay demurrage charges. While the court accepts "well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff, to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls." Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005). The credit application merely states that Milwaukee Bulk Terminal Inc.[8] agrees "that payments will be made in accordance with the rules and regulations" on the back of the application. However, nowhere on the back of the application does it state, as plaintiff asserts, that MBT accepts "liability for demurrage charges." Nor does it state, as plaintiff contends in its response brief, that "payment will be made in accordance with rules and regulations under CP Tariffs." Because the terms of the contract do not indicate that plaintiff has a right to relief, plaintiff has pled itself out of court with respect to this claim. See id. ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate the he or she is not entitled to judgment.") (internal citations and quotations omitted.) Consequently, Count II of plaintiff's complaint as plead against MBT is dismissed.

In Count III, plaintiff alleges that MBT is liable for the demurrage charges based on the parties' prevailing customs and practices. Plaintiff alleges that "[a]t all times during 2012 and 2013, Plaintiff CP, as a custom and practice, regularly sent written" notice to MBT advising it of each railcar "designated to be delivered to MBT." Plaintiff alleges that the notice delivered to

---

[8] MBT points out that the credit application was between Soo Line Railroad Company and Milwaukee Bulk Terminals, *Inc.*, not Milwaukee Bulk Terminals, *LLC*. However, because the court must accept plaintiff's well-plead allegations as true, the court assumes that Milwaukee Bulk Terminals, *Inc.* was in fact intended to be Milwaukee Bulk Terminals, *LLC*.

MBT informed it that demurrage rules were governed under plaintiff's tariff and on what date demurrage charges would commence. Thereafter, MBT "would regularly fax a written 'request for services' or 'order for placement date' directing CP to" place specific railcars at its facility. "At all times during 2012 and 2013, Defendant MBT, as a custom and practice, would decide which railcars would be delivered to the MBT Facility, and which railcars would remain in storage at Plaintiff's holding point." Plaintiff alleges that "MBT was primarily responsible for the accrual of charges."

MBT argues that Count III fails to state a claim for relief because it does not allege a "prevailing industry custom under which MBT is liable for demurrage." The court agrees. Liability for demurrage charges, "may be imposed only against . . . others by . . . prevailing custom." Evans Prods., 729 F.2d at 1113; see also Illinois Cent., 337 F.3d at 820. The Seventh Circuit requires a prevailing industry-wide practice of holding a third party non-consignee liable for demurrage charges, not a course of conduct between the two parties, as alleged here. See Illinois Cent., 337 F.3d at 821 ("We are convinced . . . that no industry-wide custom permits such a practice."); see also Groves, 586 F.3d at 1278 (no evidence of a prevailing industry custom). Because plaintiff has failed to allege an industry-wide custom of holding third-party warehouses, such as MBT, liable for demurrage charges, Count III as alleged against MBT is dismissed.

Finally, in Count IV, plaintiff alleges that MBT is liable for the demurrage charges based on "an express or implied contract for services to be rendered [to MBT] by plaintiff." Relying on the same facts alleged in support of Count III, plaintiff argues that because the placement notices sent to MBT informed it that demurrage rules were governed under plaintiff's

8

tariff, MBT "knew or should have know that any request for services . . . would be governed" by the tariff, which imposes demurrage liability on the "loader or unloader" of the railcars. According to plaintiff, each time MBT submitted an "order for placement date" or "request for services," instructing plaintiff to place railcars at its facility, an express or implied contract for services was formed, "subject to the terms and conditions of" plaintiff's tariff.

Under Wisconsin law, which plaintiff asserts governs here, "[r]ecovery in quantum meruit is allowed for services performed for another on the basis of a contract implied by law to pay the performer the reasonable value of the services." Ramsey v. Ellis, 168 Wis.2d 779, 784 (1992). To establish a contract implied-in-law, as plaintiff argues it has alleged, a plaintiff must show that the defendant requested services from the plaintiff and that the plaintiff expected reasonable compensation in return for those services. Id. "Damages in a quantum meruit claim are measured by the reasonable value of the plaintiff's services." Id. at 785.

Count IV, however, does not seek compensation for the reasonable value of services plaintiff allegedly performed. Nor does plaintiff allege that it expected compensation or that its services where of any value to defendant. Instead of seeking compensation for its alleged services, plaintiff attempts to use this quasi-contractual form of relief to bind MBT to the terms of its tariffs thereby rendering it liable for the demurrage charges at issue. As such, Count IV fails to state a claim for quantum meruit.

Likewise, plaintiff's claim of an express or implied-in-fact[9] contract also fails. "A contract implied-in-fact may arise from an express agreement or from an agreement as evidenced

---

[9] "[T]here is no difference between an express contract and an implied (in fact) contract." Matter of Stromsted's Estate, 99 Wis.2d 136, 142 n.5 (1980) (internal quotations omitted).

9

by circumstances which show a mutual intention to contract." Matter of Stromsted's Estate, 99 Wis.2d at 139 n.1. Plaintiff has not alleged an express agreement between the parties in which MBT orally or in writing agreed to pay for demurrage charges levied by plaintiff. Nor has plaintiff alleged, as MBT points out, the basic elements of the contract MBT allegedly intended to enter into with plaintiff. Specifically, Count IV lacks any allegation that consideration was exchanged or expected to be exchanged as a part of the parties' implied contract for services. See Bissessur v. Indiana Bd. Of Trustees, 581 F.3d 599, 603 (7th Cir. 2009) (discussing the necessary factual allegations for a breach of contract claim). Consequently, Count IV does not plausibly suggest that plaintiff has a right to relief against MBT and must be dismissed.

## CONCLUSION

For the foregoing reasons, MBT's motion to dismiss the second amended complaint is granted.

**ENTER:** **November 9, 2015**

_(signature)_

**Robert W. Gettleman**
**United States District Judge**